**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

ELIUD CINTRON,

                                   Plaintiff,                    **21-CV-09897 (SN)**

                 -against-                                       <u>**OPINION & ORDER**</u>

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 3/20/2023 __

**SARAH NETBURN, United States Magistrate Judge:**

  Eliud Cintron seeks review of the decision of the Commissioner of Social Security (the

"Commissioner") finding that he was not disabled between April 12, 2013, and October 24,

2016, and denying him supplemental security income ("SSI") under the Social Security Act (the

"Act") during that period. (The Commissioner found he was disabled starting on October 24,

2016, when he turned 50.) The parties have cross-moved for judgment on the pleadings.

Cintron's motion is GRANTED, and the Commissioner's motion is DENIED.

<b>BACKGROUND</b>

**I.  Administrative History**

  Cintron applied for SSI on April 12, 2013. <u>See</u> ECF No. 18 Administrative Record ("R.")

354. He alleged disability beginning January 1, 2013, due to depression, arthritis, anxiety, and

hepatitis C. R. 358. On June 10, 2013, his application was denied, and he requested a hearing

before an administrative law judge ("ALJ") to review his case. R. 110, 168. Cintron appeared

with counsel for a hearing before ALJ Wallace Tannenbaum on October 2, 2014, and he issued a

decision denying Cintron's claim on November 17, 2014. R 59, 112-23. On March 21, 2016, the

Appeals Council granted Cintron's request for review and remanded the case for a new hearing and decision. R. 128. That hearing resulted in a second unfavorable decision, which was also remanded by the appeals council. R. 136, 151. A third hearing was held on October 16, 2018, yielding a third unfavorable decision. R. 17-28. Cintron's request for review of that decision was denied on August 9, 2018. R. 1. Cintron then commenced a civil action in United States District Court, which ended with the parties stipulating to a remand. R. 1885; see also Cintron v. Commissioner of Social Security, No. 19-cv-09248 (MKV)(SDA), at ECF No. 16 (S.D.N.Y. July 20, 2020).

Following remand, a final hearing was held before ALJ Brian J. Kanner[1], who issued a partially favorable decision on August 2, 2021. R. 1826-38. Cintron filed no exceptions to that decision, and the appeals council did not assume jurisdiction, making the ALJ's decision final 61 days from the date it was issued. See 20 C.F.R. § 416.1484(c)-(d); 42 U.S.C. § 405(g).

## II.    Cintron's Civil Case

Cintron filed his complaint on November 24, 2021, seeking review of the ALJ's decision. See ECF No. 1. He requested that the Court set aside the decision and grant him SSI benefits retroactively to the date of his original application, or, alternatively, remand the case for further proceedings. Id. p. 2. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. See ECF Nos. 18, 23, 28. Cintron argues that the ALJ erred by relying on the Act's Medical-Vocational Guidelines[2] (the "Grids"), by failing to properly weigh the medical opinion evidence, and by failing to properly evaluate Cintron's subjective statements. See ECF No. 24 ("Pl. Br.") at 12, 15, 24. The Commissioner contends that

---

[1] Cintron initially appeared for a hearing before ALJ Elias Feuer on January 4, 2021. R. 1849. That hearing was continued, and in the interim was reassigned to ALJ Kanner. See R. 1859, 1866.
[2] 20 C.F.R. Pt. 404, subpt. P, app'x 2; see also 20 C.F.R. § 416.969.

the ALJ's reliance on the Grids was not error, and that he properly evaluated both the medical opinion evidence and Cintron's subjective statements. <u>See</u> ECF No. 29 ("Def. Br.") at 24, 16, 20.

The Honorable Gregory H. Woods referred this case to my docket, and the parties consented to my jurisdiction on February 15, 2022, pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

## III.   Factual Background

This case has a decade-long history that includes five separate ALJ hearings and an earlier stipulated remand at the District Court level. Thus, in the interest of minimizing the further expenditure of judicial resources on this matter, the Court adopts the parties' recitation of Cintron's medical and non-medical record evidence, <u>see</u> Pl. Br. at 2-12, Def. Br. at 4-15. Because Cintron does not contest the ALJ's determination regarding his physical impairments, <u>see</u> Pl. Br. at 2 n.5, the analysis that follows will focus solely on the alleged legal errors relating to his mental impairments.

Cintron was born in 1966, has minimal education history, no past relevant work, and a history of incarceration and homelessness. R. 354, 64, 1837, 109, 77-78.

## IV.   The ALJ's Decision

On August 2, 2021, the ALJ denied Cintron's SSI application. R. 1826-38. The ALJ identified the administrative and procedural history, the applicable law, and his findings of fact and conclusions of law. <u>Id.</u>

At step one, the ALJ determined Cintron had not engaged in any substantial gainful activity since his application date, April 12, 2013. R. 1829. At step two, he found that Cintron had two severe impairments: adjustment disorder and osteoarthritis. <u>Id.</u> At step three, he determined that Cintron's impairments or any combination thereof did not meet or medically

equal the severity of a listed impairment in the applicable regulations ("listings"). R. 1830; see 20 C.F.R. Pts. 416.920(d), 416.925, 416.926.

      The ALJ found the requirements of listing 1.18 (abnormality of a major joint in any extremity) were not met or medically equaled. R 1830. The ALJ also found the requirements of listings 12.04, 12.06, and 12.08[3] were not met or medically equaled. Id. The ALJ observed that these listings require "at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves" but that Cintron had only mild and moderate limitations in these areas. R. 1830-31. The ALJ also observed that Cintron did not have only minimal capacity to adapt to changes in his environment or daily life as required by the listings. R. 1831-32. The ALJ concluded that the record did not support a finding of medical equivalence between Cintron's impairments and any other listed impairment. R. 1832.

      The ALJ established Cintron's residual functional capacity ("RFC"). Id. He found that Cintron possessed the RFC to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), with the additional non-exertional limitation that he is limited to "simple, routine (1 and 2 step) instructions and tasks." Id. At step four, the ALJ found that Cintron had no past relevant work. R. 1837.

      At step five, the ALJ concluded that, before October 24, 2016,[4] there were jobs existing in significant numbers in the national economy that Cintron could perform. Id. In reaching this conclusion, the ALJ relied upon the Grids, which direct a finding of "not disabled" for a person

---

[3] Respectively: depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; personality and impulse-control disorders.
[4] The final day before Cintron turned 50. After this day, his age classification changed from "younger individual" to "approaching advanced age." See 20 C.F.R. § 416.963.

of Cintron's then-age with limited educational history and no previous work experience whose RFC limits them to sedentary work. R. 1837-38; see 20 C.F.R. Pt. 404, subpt. P, app'x 2 § 201.18. Here, the ALJ noted that Cintron's additional restrictions limiting him to simple instructions and tasks "have little or no effect on the occupational base of unskilled sedentary work" and therefore were not inconsistent with the Grids' "not disabled" designation. R. 1838.

The ALJ also found that, after Cintron's age classification changed on October 24, 2016, there were no jobs that existed in significant numbers in the national economy that Cintron could perform. Id.; see 20 C.F.R. Pt. 404, subpt. P, app'x 2 § 201.09.

Because the ALJ found Cintron was able to engage in substantial gainful activity before October 24, 2016, he concluded that Cintron was not disabled before that date, but became disabled on that date and remained disabled through the date of decision. R. 1838.

## DISCUSSION

### I.    Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error, or it is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.

1990) ("Where there is substantial evidence to support either position, the determination is one to

be made by the factfinder."). Therefore, if sufficient evidence supports the ALJ's final decision,

the Court must grant judgment in favor of the Commissioner, even if substantial evidence also

supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d

Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject

those facts only if a reasonable factfinder would *have to conclude otherwise*." (emphasis in

original) (citations and internal quotation marks omitted)). Although deferential to an ALJ's

findings, a disability determination must be reversed or remanded if it contains legal error or is

not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II.     Definition of Disability

A claimant is disabled under the Act if they demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A

"physical or mental impairment" is defined as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D). A claimant will be found to

be disabled only if their "impairments are of such severity that [they are] not only unable to do

[their] previous work but cannot, considering [their] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ."

Id. § 1382c(a)(3)(B).

An ALJ must proceed through a five-step process to make a disability determination. See

20 C.F.R. § 416.920. The steps are followed in order; if it is determined that the claimant is or is

not disabled at a step of the evaluation process, the evaluation will not progress to the next step.

See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof as to steps one, two, three, and four; the Commissioner bears the burden as to step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

**III.    Analysis**

Cintron argues that the ALJ erred at step five by relying on the Grids, by failing to properly weight the medical opinion evidence, and by failing to properly evaluate Cintron's subjective statements. Pl. Br. at 12, 15, 24.

**A.  The Grids**

"[R]eliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations. . . . [E.g.,] where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." Rosa, 168 F.3d at 78 (internal quotation marks omitted). "In these circumstances, the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" Id. (quoting Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986)).

"[W]here the claimant's work capacity is significantly diminished beyond that caused by [their] exertional impairment the application of the grids is inappropriate." Bapp, 802 F.2d at 605-06. "By the use of the phrase 'significantly diminish' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id.

An ALJ may nonetheless rely on the Grids if they find that the Grids adequately address a claimant's non-exertional limitations, but the ALJ is obligated to explain such a finding. Chaparro v. Colvin, 156 F. Supp. 3d 517, 538 (S.D.N.Y. 2016) (gathering cases). "[C]ourts in this district consistently have found it to be reversible error for ALJs to rely solely on the Grids when a plaintiff has moderate psychiatric limitations resulting in nonexertional limitations." Id.

Here, the ALJ found that Cintron possessed mild limitations in understanding, remembering, or applying information and interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace, as well as with adapting or managing himself. R. 1831. The ALJ then identified a nonexertional limitation restricting Cintron to "simple, routine (1 and 2 step) instructions and tasks." R. 1831-32.

The ALJ justified his reliance on the Grids, despite the presence of this nonexertional limitation, by stating that the "additional limitations have little or no effect on the occupational base of unskilled sedentary work." R. 1838. The ALJ went on to define that occupational base as including the ability to, on a sustained basis, "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations" and "deal with changes in a routine work setting" before noting that "[a] substantial loss of ability to

meet any of these basic work-related activities would severely limit the potential occupational base." Id. (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857).

Cintron argues that the limitations identified by the ALJ constitute a non-negligible additional loss of work capacity and that therefore application of the Grids was inappropriate. The Commissioner responds that the ALJ adequately explained his reliance on the Grids by comparing Cintron's limitations in the context of SSR 85-15's definition of unskilled work and finding them to be non-mutually exclusive. See Chaparro, 156 F. Supp. 3d at 538.

The Commissioner analogizes to an unreported District of Connecticut case in which the court deemed a non-exertional limitation of "simple work" with "only occasional interaction with others" to be compatible with unskilled work. See Verret v. Colvin, No. 14-cv-234 (SRU), 2016 WL 1182980, at *2 (D. Conn. Mar. 28, 2016). In reaching that conclusion, the court relied on SSR 85-15's requirement of a "*substantial* loss of ability to meet any of [the requirements of unskilled work]." 1985 WL 56857 (emphasis added).

The Commissioner's reliance on Verret obscures the issue. SSR 85-15 states that a substantial loss of ability will "justify a finding of disability." Cintron's contention is not that his non-exertional limitations entitle him to a finding of disability *per se*, but that it results in a non-negligible loss of work capacity that, per Bapp, precludes reliance on the Grids and required the testimony of a vocational expert. Because the ALJ identified mild and moderate limitations that would almost certainly constitute a non-negligible additional loss in work capacity beyond simply working at the sedentary level, I agree. And while the ALJ had discretion to forgo the testimony of a vocational expert, doing so required him to explain his finding. The ALJ's statements that the "additional limitations fall within [the] description of unskilled work" is conclusory and not an explanation sufficient to justify forgoing vocational expert testimony. See

Hernandez v. Colvin, No. 13-cv-03035 (RPP), 2014 WL 3883415, at *15 (S.D.N.Y. Aug. 7, 2014) (gathering cases discussing "explanation" in this context). Moreover, it is unclear how the limitations identified by the ALJ are at all compatible with SSR 85-15's definition of sedentary work. Compare R. 1831 ("moderate limitations in concentrating, persisting, or maintaining pace") with 1985 WL 56857 ("understand, carry out, and remember simple instructions [on a sustained basis]").

On remand the ALJ is directed to acquire the testimony of a vocational expert to determine if, prior to turning 50, Cintron's non-exertional limitations would have precluded him from finding work.

**B. Weight of the Medical Opinion Evidence**

Because Cintron's claim was filed before March 27, 2017, it is governed by the "old" regulations, including the "treating physician rule." 20 C.F.R. § 416.927; see also 20 C.F.R. § 416.920c.

The treating physician rule instructs the ALJ to give controlling weight to the opinions of a claimant's treating physician if the opinion is well-supported by medical findings and is not inconsistent with the other evidence in the record. 20 C.F.R. § 416.927(c)(2). Affording a treating physician's opinion controlling weight reflects the reasoned judgment that treating physicians are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id.; see also Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam); Mejia v. Barnhart, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003) ("[A]s the report of a

primary treatment provider, [the psychotherapist's] report should have been accorded more than 'little' weight.").

Where mental health treatment is at issue, the treating physician rule takes on added importance. A patient may have good days and bad days; they may respond to different stressors that are not always active. Thus, the longitudinal relationship between a mental health patient and their treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination. See Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." (quoting Richardson v. Astrue, No. 09-cv-1841 (SAS), 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009))).

"[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor." Duncan v. Astrue, No. 09-cv-4462 (KAM), 2011 WL 1748549, at *20 (E.D.N.Y. May 6, 2011) (citing Clark v. Comm'r of Social Sec., 143 F.3d 115, 118 (2d Cir.1998)). "When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, they must decide how much weight it should be afforded, considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a

whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other significant factors. 20 C.F.R. § 416.927(c)(2)-(6); Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply [these] factors when assigning weight at step two is a procedural error." Estrella, 925 F.3d at 96. However, if the Court is assured upon "a searching review of the record" that "the substance of the treating physician rule was not traversed," affirmance is appropriate. Id. (quoting Halloran, 362 F.3d at 32-3).

Treating psychiatrist Dr. Han's April 5, 2013 opinion noted that Cintron had mild to moderate limitations and was "easy to decompensate under stress since he is vulnerable to depression and unstable mood." R. 1835; see R. 450-55. Strangely, the ALJ afforded this opinion only partial weight, despite finding these limitations to be consistent with the rest of the evidence. Id.

The ALJ also afforded only partial weight to Dr. Han's August 28, 2013 opinion that Cintron had numerous moderate limitations and marked ones in his ability to deal with the stress of semi-skilled and skilled work, work in coordination with or proximity to others without being unduly distracted, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes. R. 1835; see R. 487-92. The ALJ justified his discounting of this opinion by noting that it was "internally inconsistent" with Dr. Han's earlier opinion, and by baldly stating that it was not "consistent with the treatment record showing [less severe] limitations." R. 1835.

The ALJ also afforded the opinion of treating psychiatrist Dr. Iloh only limited weight. Id.; see R. 626-31. The ALJ found that Dr. Iloh's opinion that Cintron possessed "moderate to marked limits in most areas of functioning" and "would be absent two to three times per month due to his impairments" was inconsistent with the "numerous normal mental status exams of

record" as well as the "testimony of the medical expert who had the benefit of a more complete record." R. 1835. The "normal mental status exams" cited by the ALJ are largely cursory visit notes from non-mental health providers, or other one-off evaluations, such as one conducted by a social worker "for housing purposes only." R. 1003-08. In addition, common sense dictates that a nominally "normal" mental status note must be taken in the broader context of a patient with multiple mental-health diagnoses and an extended history of incarceration and homelessness.

The ALJ's failure to explicitly apply the factors required to discredit the opinions of Cintron's treating physicians is legal error. In addition, the cursory way in which the ALJ discounted those opinions while giving "great weight" to the testimony of non-examining psychologist Dr. Koocher and consultative examiner Dr. Fujiwaki raises a suspicion that the ALJ failed to consider the treating physician rule's applicability to this case. On remand the ALJ should give appropriate deference to the opinions of Cintron's treating physicians and assess them under the applicable regulations.

### C. Cintron's Subjective Statements

Cintron argues that the ALJ improperly evaluated his subjective statements concerning the intensity, persistence, and limiting effects of his symptoms before finding they were "not fully supported." Pl. Mem. at 24-25. Perhaps because Cintron did not testify in any substantive way before ALJ Kanner, neither the ALJ or either of the parties identify with specificity what subjective statements have been discredited. The ALJ makes passing reference to some of Cintron's statements to his treatment providers but does not cite to any of Cintron's filings with the SSA or prior testimony before other ALJs. Thus, on this record, it is not possible for the Court to determine whether the ALJ's discrediting of Cintron's subjective statements was proper.

**CONCLUSION**

Cintron's motion is GRANTED, and the Commissioner's motion is DENIED. The action is remanded to the SSA for a calculation of benefits or further proceedings consistent with this opinion. Defendant is directed to ensure that the proceedings before an ALJ are completed within 120 days.[5] Should a decision not issue before that deadline, a calculation of benefits must be made immediately.[6] The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 23 and 28.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:         March 20, 2023
               New York, New York

---

[5] "[I]n cases involving an ALJ's failure to call a vocational expert, district courts that select remand as a remedy should consider imposing a time limit on the subsequent proceedings." Butts v. Barnhart, 388 F.3d 377, 387 (2d Cir. 2004) (noting that, when delay is measured in years, "a time limit is imperative"). "In light of the fact that more than ten years elapsed between the plaintiff's filing of his initial application and the full briefing of the current motions . . . the proceedings before an ALJ must be completed within 120 days . . . ." Lugo v. Barnhart, No. 04-cv-1064 (JSR)(MHD), 2008 WL 515927, at *26 (Feb. 8, 2008), adopted, No. 04-cv-1064 (JSR), 2008 WL 516796 (S.D.N.Y. Feb. 27, 2008).
[6] "The district court's order should provide that, if these deadlines are not observed, a calculation of benefits [] must be made immediately." Butts, 388 F.3d at 387.